## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

CASE NO.: _____

| | | |
|---|---|---|
| **SUMMIT CAPITAL PARTNERS –** <br> **TALLAHASSEE IV, LP,** | § <br> § <br> § | |
| **Plaintiff,** | § <br> § | |
| | § | |
| **V.** | § | **JURY DEMANDED** |
| | § <br> § | |
| **ARTHUR J. GALLAGHER RISK** <br> **MANAGEMENT SERVICES, INC.,** | § <br> § <br> § | |
| **Defendant.** | § <br> § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGES OF SAID COURT:**

COMES NOW the Plaintiff, SUMMIT CAPITAL PARTNERS –
TALLAHASSEE IV, LP ("Summit") by and through its undersigned counsel files
this action for damages as follows:

### Parties, Jurisdiction and Venue

1.      This is an action for damages within the jurisdiction of this Court.

2.      Summit seeks damages stemming from the Defendant, Arthur J.
Gallagher Risk Management Services, Inc., a commercial broker/producer who
obtained/produced a Commercial General Liability Insurance Policy ("CGL")
issued to Summit which failed to obtain a CGL policy with proper and required
coverages but which erroneously included a Total Gun Exclusion and which failed

to insure Summit's various, designated premises which the Defendant knew were to be included in said CGL policy, leaving Summit potentially uninsured for CGL claims made by third parties.  Gallagher and Summit entered into a contract in Texas for Gallagher to act not only as the producer of both its CGL and property policies but also to act as a professional insurance consultant to Summit.  Summit fully paid Gallagher for all of its services allegedly rendered.

3.    Specifically, Summit seeks damages as a result of the Defendant's failure to obtain proper CGL coverages on behalf of its client, Summit and for concealing pertinent information from Summit with regard to those coverages.

4.    The Plaintiff, Summit, is a limited liability company organized and existing under the laws of the State of Nevada which does business in this District and whose principal place of business is in Houston, Texas.

5.    Defendant, Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"), is an Illinois corporation, which under present information and belief, is registered with the Florida Department of State as a foreign entity and during all material times, Gallagher was doing business in Tallahassee, Florida.

6.    Defendant Gallagher may be served with process by serving either its registered agent in Florida, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida  33324 or its registered agent in Texas, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas  75201.

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the third party individuals who filed personal injury claims against Summit, Robert Norton ("Norton") and William Footman ("Footman") for which Gallagher was required to produce/obtain proper CGL policy coverages each reside in this Division, and the alleged events and/or omissions giving rise to the claims occurred in this Division.

9.     All conditions precedent to the filing of this action have occurred, been performed, or have been waived.

## General Allegations

10.     Gallagher produced/procured a CGL Policy for Summit with Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), Policy No. CSU0158629, effective October 21, 2021, to October 21, 2022 (the "CGL Policy"). The CGL Policy is subject to liability coverage limits of $1,000,000 for each occurrence and $2,000,000 in the aggregate, and a $2,500 per claim Bodily Injury Liability and Property Damage Liability combined deductible.

11.     The claims of Norton and Footman arise out of a shooting and other incidents which occurred on June 24, 2022, in Tallahassee, Florida (the "Property")

which allegedly resulted in bodily injuries to the Claimants, Norton and Footman.

12.    The Property and other involved premises were, at the time of the incidents, owned by Summit.

13.    The Claimants Norton and Footman have each filed a lawsuit in the Second Judicial Circuit of Florida against Summit and its management company, Off Campus Housing, LLC for negligence (the "Lawsuits").   The Lawsuits allege that at the time of the incidents, the Property was owned, operated and/or controlled by Summit; Summit failed to act reasonably to protect the Claimants Norton and Footman from criminal and other acts that were reasonably foreseeable on the Property; the incident occurred at a social fraternity gathering held at Summit's premises in Tallahassee, Florida; the Claimants Norton and Footman were standing on Summit Property and other premises owned by Summit when armed individuals began discharging firearms while on or about said premises; the Claimants Norton and Footman were struck by projectiles discharged by armed individuals while on said premises; the Claimants Norton and Footman were hospitalized as a result of the injuries they sustained during the incidents, and have allegedly incurred medical expenses and related damages in excess of $75,000; and, as a result of the incidents, the Claimants Norton and Footman have suffered great bodily harm, permanent physical injuries, conscious mental anguish, past and future pain and suffering, and past and future medical expenses which are normally fully covered under CGL

policies.

14.     Cincinnati claims to be currently investigating Norton's and Footman's claims and is providing a defense to the Claimants' claims against Summit subject to a full reservation of rights and has advised Summit in writing that it has uninsured risks and should obtain legal counsel to represent those uninsured risks which Summit has done thereby incurring damages in excess of $75,000.   However, recently Cincinnati filed a Declaratory Judgment action against Summit and other entities/individuals in this District, Case 4:23-cv-0032-AW-MAF to avoid having to provide CGL coverage and a defense for Norton's and Footman's claims.  See ¶ 19, *infra*.

15.     Legal and other costs have been and continue to be incurred by Summit with regard to the "uninsured risks" as declared to Summit by Cincinnati.

16.     Even though Gallagher was Summit's insurance consultant and producer and was aware of the facts that (a) Summit's properties/premises were located in a high-risk neighborhood for criminal activities, Gallagher permitted Cincinnati to issue the CGL Policy with a "Total Gun Exclusion" without advising Summit of same; (b) Gallagher failed to obtain a CGL policy generally insuring all of Summit's properties but then failed to include/designate all of Summit's premises in the CGL Policy with a Designated Premises Endorsement without advising Summit of same; (c) Summit provided to Gallagher the various premises to be

included in Summit's property policy as well as for any CGL policy and Gallagher placed/designated those premises in the property policy but not in the CGL Policy; (d) Gallagher placed the CGL coverage with an inferior, surplus lines CGL carrier which is known to frequently avoid coverages for presented third party claims; and, (e) Gallagher intentionally withheld from Summit that it had obtained a CGL Policy with a Total Gun Exclusion and a Designated Premises Endorsement from a surplus lines insurer instead of a CGL Policy issued by an in-state, registered carrier without a gun exclusion, it had failed to include/designate Summit's premises in the CGL Policy since that policy had a Designated Premises Endorsement.  Thus, Gallagher breached is agreement/contract with Summit and committed fraud by withholding from Summit that vital information.

17.    Gallagher was fully paid by Summit for the services it provided to Summit.

18.    It is now known that the Cincinnati Policy contains the following, claimed terms, exclusions and endorsements which Gallagher withheld from Summit:

SECTION I - COVERAGES

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement
      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of

"bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\*\*\*

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

\*\*\*

## SECTION V – DEFINITIONS

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

CSCGA 403 10 07

Commercial General Liability Premises Schedule

LOC.                    ADDRESS

1                        630 W Virginia St
                        Tallahassee FL 32304

2                           602 Rattler View Ct
                            Tallahassee FL 32310

3                           Conklin Lot #4101202450000
                            Tallahassee FL 32304

4                           1220 Conklin St # 1230
                            Tallahassee FL 32310

5                           691 W Tennessee St
                            Tallahassee FL 32304

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES

A.   Paragraph 1.b.(1) of the Insuring Agreement of SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced with the following:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the premises designated in the CSGA403 Commercial General Liability Premises Schedule. This insurance does not apply to "bodily injury" or "property damage" that takes place away from the premises designated in the CSGA403 Commercial General Liability Premises Schedule.

C.   The final paragraph of Section II – Who Is An Insured is deleted and replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations; or for any operations or "your work" that takes place at any location that is not

8

designated in the CSGA403 Commercial General Liability Premises Schedule.

*** 

EXCLUSION – FIREARMS OR AMMUNITION (TOTAL)

A.    The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury":

1.    Arising out of the ownership, rental, use, handling, design, manufacture, distribution, sale, transport, receipt, maintenance or repair, disposal, or advertising of a firearm or ammunition by an insured, their employees, patrons or any other person at any time.

2.    Included within the "products-completed operations hazard" with respect to any firearm or ammunition.

3.    Arising out of the failure of any insured or anyone else from whom any insured is legally responsible to prevent or suppress the use of any firearm or ammunition.

Firearm means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive, including:

1.    The frame or receiver of any such weapon; or
2.    Any firearm muffler or silencer.

9

Ammunition means cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun including:

1.    Tear gas cartridges;
2.     Chemical mace; or
3.    Any device or instrument which contains or emits a liquid, gas powder or any other substance designed to incapacitate.

\*\*\*

ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

SCHEDULE

Designation Of Premises (Part Leased to You):
1220-1230 Conklin St, Tallahassee FL 32310

Name of Person(s) Or Organization(s) (Additional Insured):
Off Campus Housing LLC 1550 Melvin Street Tallahassee, FL. 32301

Additional Premium: $.00

A.    Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by you or those acting on your behalf in connection with the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

\*\*\*

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be

10

broader than that which you are required by the contract or agreement to provide for such additional insured.

B.   With respect to the insurance afforded to those additional insureds, the following is added to Section III – Limits of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1.   Required by the contract or agreement; or

2.   Available under the applicable limits of insurance; whichever is less. This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

* * *

19.   As noted, Cincinnati has now brought a Declaratory Judgment Action in Case No. 4:23-cv-00032-AW-MAF; *Cincinnati Specialty Underwriters Insurance Company v. Summit Capital Partners – Tallahassee IV, LP, Robert Norton, William Footman, and Off Campus Housing, LLC*; In the United States District Court for the Northern District of Florida, Tallahassee Division seeking a declaration that it has no duty to defend or indemnify its insured, Summit, with respect to the bodily injury claims asserted by the Claimants, Norton and Footman. Cincinnati has informed Summit that it has actual, uninsured risks with regard to the Lawsuits and needs to take actions to protect itself from the same as would a reasonably prudent uninsured.

20.    Gallagher wrongfully and knowingly allowed the CGL Policy to contain a Limitation of Coverage to Designated Premises Endorsement stating that the Policy only applies to "bodily injury" that is caused by an "occurrence" that takes place at a premises designated on the CGL Policy's Premises Schedule without stating/designating all of Summit's premises in that CGL Policy as well as a Total Gun Exclusion.  Normal CGL policies do not designate insured premises, but rather, insure all of an insured's premises anywhere, whether owned or leased.  Gallagher failed to obtain such CGL coverage for Summit.  Thus, Gallagher not only breached its contractual obligations to Summit but also breached its common law duties to Summit and committed fraud by withholding vital information from Summit.

21.    The Lawsuits further allege that the Claimant Norton was standing on the premises located on Summit's undesignated premises when an armed individual began discharging a firearm while on those premises even though the incidents occurred on all of Summit's premises.  However, the Claimant Footman was actually injured on another of Summit's premises which has not yet been identified.  However, Gallagher's acts and omissions have now permitted Cincinnati to avoid its contractual responsibility to provide CGL coverages to Summit.  Summit must now not only defend its uninsured exposures in the Lawsuits but also defend a Declaratory Judgment Action filed by Cincinnati as well as prosecuting this case against Gallagher, all of which have been caused by Gallagher's malfeasance.

22.     According to Cincinnati, the Property is not one of the designated premises designated on the CGL Policy's Premises Schedule because Gallagher negligently or intentionally failed to schedule/designate those premises on the CGL Policy even though Summit had advised it of same prior to Gallagher procuring the CGL Policy.

23.     Based upon the noted allegations in the Lawsuits and the Designated Premises Endorsement coverage for the Claimants' alleged "bodily injury" damages, Cincinnati now claims that those damages are not covered under the CGL Policy and that Summit is exposed to uninsured risks and should incur expenses to protect itself. Cincinnati has also invoked the Total Gun Exclusion.

24.     Gallagher also wrongfully permitted/allowed the CGL Policy to contain that firearms or ammunition exclusion which purports to state that the insurance does not apply to "bodily injury" arising out of the use or handling of a firearm by any person at any time.

25.     Therefore, Cincinnati now claims that based upon these allegations in the Lawsuits and the exclusion for firearms or ammunition in the CGL Policy, the Claimants Norton's and Footman's alleged "bodily injury" damages are completely excluded from coverage under the Policy and that Summit is required to expend substantial sums which it has done.

## **Causes of Action**

26.    Paragraphs 1 through 25 are incorporated herein for all intents and purposes as if set forth herein *verbatim*.

27.    The acts and omissions on the part of Gallagher amount to breaches of contract, negligence, gross negligence, intentional acts/common law fraud and other causes of action to be shown at trial.

### Count I – Breaches of Agreement/Contract:

28.    Summit hired Gallagher on or about November 9, 2021, to act as its producing agent and professional insurance consultant with regard to the procurement of various insurance coverages, particularly CGL and property policies. Summit relied upon Gallagher to provide all of these services and to obtain the benefit of Gallagher's expertise in insurance policies and coverages.  Gallagher represents to all the world, including to Summit, that it provides "casualty insurance wherein [Gallagher] identifies coverage gaps and develops customized solutions to *assume maximum protection for [its] clients*."  Thus, Gallagher was not only required to provide professional risk management services to Summit but to ensure that Summit obtained all necessary CGL and property insurance coverages for its properties/premises as Summit does not have expertise in insurance matters.  In this regard, Gallagher was paid handsomely for the production of insurance coverages, its expertise in risk management and as an insurance consultant per the agreement between Summit and Gallagher.  Summit provided Gallagher with a list of all of its

premises in Tallahassee, Florida to insure.  Gallagher utilized this list and obtained

property insurance to cover those properties but failed to do so with the CGL policy

it procured for Summit.

29.     Gallagher was to also secure CGL coverages for these same properties

but breached its agreement with Summit in the following particulars:

- Gallagher failed to obtain CGL coverage from a Florida admitted carrier, but rather, obtained that coverage from an inferior, surplus lines carrier, Cincinnati;

- Gallagher failed to obtain a customary CGL policy that insured Summit's premises anywhere, whether owned or leased;

- Gallagher permitted a Designated Premises Endorsement to be included in the CGL policy;

- Gallagher failed to designate all of Summit's premises in the CGL policy in Tallahassee, Florida even though it had received a list of Summit's premises to be insured and had used that list to designate those premises for the property policy procured for Summit;

- Gallagher was aware of the fact that Summit's properties in Tallahassee, Florida were located in a high crime neighborhood and still allowed a "Total Gun & Ammunition Exclusion" to be included in the CGL Policy; and,

- Gallagher failed to advise/inform Summit of any of the foregoing facts.

30.     All of these breaches of contract proximately caused Summit to incur

now and in the future substantial damages.

***Count II – Negligence:***

31.    Paragraphs 1 through 25 are incorporated herein for all intents and purposes as if set forth *verbatim*.

32.    In Florida, a claim for negligence requires (a) a legal duty owed by the defendant to the plaintiff; (b) breach of that duty by the defendant; (c) injury to the plaintiff which was legally caused by defendant's breach; and (d) damages as a result of that injury.  See, *U.S. v. Stevens*, 994 So.2d 1062, 1065-1066 (Fla. 2008).

33.    As a paid insurance consultant to Summit, Gallagher had a duty to properly secure proper CGL insurance coverages for Summit, breached that duty, and legally caused damages to Summit.  Gallagher breached these duties in the following particulars:

- Gallagher failed to obtain CGL coverage from a Florida admitted carrier, but rather, obtained that coverage from an inferior, surplus lines carrier, Cincinnati;

- Gallagher failed to obtain a customary CGL policy that insured Summit's premises anywhere whether owned or leased;

- Gallagher permitted a Designated Premises Endorsement to be included in the CGL policy;

- Gallagher failed to designate all of Summit's premises in the CGL policy in Tallahassee, Florida even though it had received a list of Summit's premises to be insured and had used that list to designate those premises for the property policy procured for Summit;

- Gallagher was aware of the fact that Summit's properties in Tallahassee, Florida were located in a high crime neighborhood and still allowed a "Total Gun & Ammunition

Exclusion" to be included in the CGL Policy; and,

- Gallagher failed to advise/inform Summit of any of the foregoing facts.

**Count III – Gross Negligence:**

34.     Paragraphs 1 through 25 are incorporated herein for all intents and purposes as if set forth *verbatim*.

35.     Pursuant to Florida Statutes Chapter 768, Section 72, gross negligence is defined as "conduct [that] was so reckless or wanting in a case that it constituted a conscious disregard of or indifference to life, safety, *or rights of persons exposed to such conduct*."   That is, such alleged conduct was reckless.   The difference between ordinary and gross negligence in Florida is a fine line.

36.     The following acts and omissions constitute gross and reckless misconduct on the part of Gallagher:

- Gallagher recklessly failed to obtain CGL coverage from a Florida admitted carrier, but rather, obtained that coverage from an inferior, surplus lines carrier, Cincinnati;

- Gallagher recklessly failed to obtain a customary CGL policy that insured Summit's premises anywhere whether owned or leased;

- Gallagher recklessly permitted a Designated Premises Endorsement to be included in the CGL policy;

- Gallagher recklessly failed to designate all of Summit's premises in the CGL policy in Tallahassee, Florida even

though it had received a list of Summit's premises to be insured and had used that list to designate those premises for the property policy procured for Summit;

- Gallagher was aware of the fact that Summit's properties in Tallahassee, Florida were located in a high crime neighborhood and still allowed a "Total Gun & Ammunition Exclusion" to be included in the CGL Policy; and,

- Gallagher recklessly failed to advise/inform Summit of any of the foregoing facts.

**Count IV – Intentional Acts/Common Law Fraud:**

37.   Paragraphs 1 through 25 are incorporated herein for all intents and purposes as if set forth *verbatim*.

38.   The elements of common law fraud in Florida which necessarily include Summit's claims for intentional acts are (a) the defendant made a false statement regarding a material fact; (b) the defendant knew or should have known the representation was false; (c) the defendant intended that the representation induced the plaintiff to act on it; and, (d) the plaintiff suffered damages in justifiable reliance on the representation.  See, *Liberty Nat'l. Bank v. Roy A. Joseph*, In the Supreme Court of the State of Florida, Sup. Ct. Case No. SC04-1255, Dist. Ct. Case No. 5D003-624 (2004).

39.   The following facts establish common law fraud on the part of Gallagher:

(a)   in and about November, 2021, and before, Richard Montemayor and others at Gallagher represented to Summit that Gallagher would obtain the necessary and proper CGL coverages for Summit to insure all of its premises for all CGL risks in a high risk neighborhood known to Gallagher by (i) receiving the list of all of Summit's properties to insure and knowing the locations of these premises in a high risk crime neighborhood; (ii) knowing that Summit's risks should be insured by an admitted carrier in the State of Florida; and (iii) knowing that the CGL policy should not contain a gun exclusion or a Designated Premises Endorsement.

(b)   Gallagher knew or should have known these representations were false especially when it failed to procure CGL coverages with an admitted carrier, failed to obtain customary CGL coverages for all of Summit's premises instead of permitting a Designated Premises Endorsement and a Total Gun Exclusion, as follows:

>   Gallagher knew or should have known that its representations to Summit were false as established by its intentional concealment from Summit that it (i) procured CGL coverage from an inferior surplus lines carrier, Cincinnati; (ii) intentionally failed to procure customary CGL coverages for all of Summit's provided premises, but rather, permitted/ produced CGL coverage with a Designated Premises Endorsement without informing Summit of same; and, (iii) permitted/produced a CGL policy to be issued to Summit with a Total Gun Exclusion and intentionally withheld from Summit those facts.

(c)   Gallagher intended that its representations would induce Summit to act upon same by procuring Gallagher's professional services and by paying it substantial monetary consideration for those services.

(d)     Summit suffered substantial damages in justifiable reliance upon Gallagher's representations by now suffering uninsured exposure to substantial claims made by the Claimants Norton and Footman as acknowledged by Cincinnati in its advises to Summit that it currently has such uninsured risks for which Summit has thus far suffered monetary damages.   Had Gallagher not intentionally and fraudulently withheld from Summit what it had failed to do with regard to the CGL Policy, Summit would have either insisted upon Gallagher obtaining the correct coverages or obtained the correct coverages through another source and thus, avoided the damages complained of herein.

## Damages

40.     Paragraphs 1 through 39 are incorporated herein for all intents and purposes as if set forth herein *verbatim*.

41.     As a proximate result of Gallagher's acts and omissions, Summit is entitled to the award of actual damages in excess of the jurisdictional limits of this Court.

## Attorney's Fees

42.     Paragraphs 1 through 41 are incorporated herein for all intents and purposes as if set forth herein *verbatim*.

43.     As a result of Gallagher's breaches of contract, Summit is entitled to the award of reasonable and necessary attorney's fees in an amount in excess of the jurisdictional limits of this Court as may be provided by Florida statute or contract.

## Notice of Punitive/Exemplary Damages

44.     Paragraphs 1 through 43 are incorporated herein for all intents and purposes as if set forth herein *verbatim*.

45.     It is anticipated that the discovery in this case will demonstrate a sufficient, factual basis to subsequently obtain the award of punitive and exemplary damages. Those facts will probably demonstrate that as a result of Gallagher's grossly negligent and/or intentional acts and omissions and as a result of Gallagher intentionally and fraudulently failing to advise Summit that it had placed CGL coverages with a surplus lines carrier and fraudulently concealing from Summit that it had failed to include/designate all of Summit's premises on the CGL Policy and that it permitted both a Total Gun Exclusion and a Designated Premises Endorsement to be placed in the CGL Policy which it produced, Summit is entitled to the award of punitive and exemplary damages in excess of the jurisdictional limits of this Court.  Pursuant to Section 768.72, Florida Statutes, a "claim for punitive damages shall be permitted [when] there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages."  Pursuant to Section 768.72(2), Florida Statutes, "[A] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence," wherein "'intentional misconduct'

means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage" and further wherein "'gross negligence' means that the defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety, or *rights of persons exposed to such conduct*."

## **Request for Rule 54(c), Fed. R. Civ. P. Relief**

46.     Paragraphs 1 through 45 are incorporated herein for all intents and purposes as if set forth herein *verbatim*.

47.     Summit requests all relief and damages from Gallagher whether or not prayed for herein but to which it is entitled pursuant to Rule 54(c), Fed. R. Civ. P.

**WHEREFORE**, Summit requests that this Court:

a.     award actual damages to Summit suffered/incurred as a proximate result of Gallagher's breaches of contract, negligent and grossly negligent actions, intentional and fraudulent actions;

b.     award reasonable and necessary attorney's fees and costs as a result of Gallagher's multiple breaches of contract;

c.     award punitive and exemplary damages; and,

d.     award Summit its taxable costs incurred in prosecuting this case and such other and further relief as this Court deems proper under the circumstances and pursuant to Rule 54(c), Fed. R. Civ. P.

Respectfully submitted,

By:   */s/ J. Douglas Sutter*
     J. DOUGLAS SUTTER
     dsutter@ksklawyers.com
     Texas Bar No. 19525500
     Texas Federal Bar. No. 3791

**ATTORNEY-IN-CHAGE FOR PLAINTIFF
SUMMIT CAPITAL PARTNERS –
TALLAHASSEE IV, LP**


*/s/ D. Ross McCloy*
**D. ROSS MCCLOY, JR.,
HAND ARENDALL HARRISON
SALE**
rmccloy@handfirm.com
Florida Bar No. 262943
304 Magnolia Avenue
Panama City, Florida 32401
Telephone: (850) 769-3434
Facsimile: (850) 769-6121

**OF COUNSEL:
SUTTER & KENDRICK, P.C.**
5858 Westheimer Rd., Suite 688
Houston, Texas 77057
Telephone: (713) 595-6000
Facsimile: (713) 595-6001


## JURY DEMAND

    Plaintiff hereby demands a trial by jury on all issues presented in this Complaint.


            /s/ J. Douglas Sutter
            **J. DOUGLAS SUTTER**